Thank you very much. Good morning, Your Honors. Jonathan Newman, Attorney for the Defendant Appellant Robert Elizondo. May it please the Court. The Supreme Court unequivocally declared in the Halson case about 15 years ago that procedural matters are presumptively for the arbitrators and not for courts to decide. This has been reiterated by the Supreme Court as recently as the BG Group case a couple years ago. It has been announced by this Court subsequent to Halson as well. Most recently, I believe, in Lagstein, but in certain other Ninth Circuit cases as well. And what this case boils down to is a procedural question of how many arbitrators should have been involved in this case. The question of the number of arbitrators in a case has, to my knowledge, not been dealt with directly by the Ninth Circuit. It has been dealt directly by the Fourth Circuit and Doxer and a number of the district courts and some State courts subsequent to Doxer, including the district for the District of Columbia, and those courts have all unequivocally come to the determination that the number of arbitrators in a case is a procedural rather than a substantive   Sotomayor, did the arbitrator here interpret the applicable FINRA rules, or did he just look at them and say, ah, it's more efficient for me just to continue to hear the case? He actually interpreted the FINRA rules in this case. He took argument from both sides, both myself and Mr. Buss, who is here as well, as to the applicability of those rules and how they were, how they had to determine the answer to the question of whether or not the case could proceed. Arguments were made on both sides that the way the rules are framed, and there's actually no rule dealing with an amendment that increases the amount over $100,000. He came to the determination that the rules allowed him to constrain himself to the original complaint. Here there had been no motion that was made by either side. There had been no motion made to amend the complaint by the claimant, the defendant appellant, Robert Elizondo. There had been no motion for determination or for clarification or to add an arbitrator or to delay the hearing so that the matter could be determined by the But what's the closest thing the arbitrator said that comes to, I interpret these rules as allowing me to hear the case because the language doesn't address changes in damages requested. Well, I don't think the arbitrator needs to hinge his decision on whether or not there's a specific rule. The FINRA rules, Rule 12409 in particular, vest the arbitrator with the sole jurisdiction and determine-making ability to interpret the rules as he sees fit. He's asking if he interpreted 12401, and what's the closest to him interpreting it? I don't know that he specifically made reference to Rule 12409. I believe that the arbitrator made reference to the rules in general. He didn't or 12401. And the arbitrator spoke about the ability for a sole arbitrator to proceed on a case where damages have increased, again, not by virtue of any proposed amendment, but merely by a statement in a pre-hearing brief that states that these were the losses in the case. And I cited to the arbitrator's decision. It's on pages 30 and 31 of my appellant brief. And the arbitrator said that, if I can read for the Court, is the basic question I was asking was whether or not we should proceed on the basis of the original complaint, which is $100,000, which is within the FINRA rule authorization for a single arbitrator to proceed. I think Mr. Newman is correct that in cases, the cases on occasion have been submitted to the single arbitrator based on the original complaint. And the consequence has been that in the course of the development of the proceedings, whatever numbers were chosen by the complainant at the outset have nevertheless been binding on the arbitrator. And then he goes into a decision of why he felt that that was the appropriate course here. So he was not just willy-nilly pulling something out of thin air. He was interpreting the rules and what the rules allowed him to do. And under the Supreme Court's jurisprudence and under the Ninth Circuit's jurisprudence where the Court has stated that where you get to procedural questions as long as, and it was this circuit as recently as last year in the Southwest Regional case, the Court said that as long as an arbitrator is even arguably construing the rules and it doesn't make a difference if this court would agree or the district court would agree or any court would agree, as long as he is arguably construing the rules. Let me try to be more specific on this. If I understand it correctly, the arbitrator himself brought up the issue. That is whether since there was a request to change the prayer to $125,000, whether he still had jurisdiction. I gather he asked for comments from each of you, and then he decided. But did he not refer to 12401 or some aspect of the FINRA rules that seemingly required him to get more arbitrators involved? I think close to that, but not exactly. What the arbitrator did was he said that not that there had been a request to amend the damages, because there had never been a request to amend the damages. What he said was there has been made mention of this larger number, and how does that impact me? And he asked for comments from both sides, and we both made arguments of how that Bottom line is the arbitrator himself, based upon the mention, brought up the issue, raised the issue, was aware of FINRA's rules and asked for comments, and then he construed the rules and his ability to proceed with just one arbitrator. Is that right? Yes, Your Honor. And so the language construing it is what you were saying before, that the number in the original complaint is binding on the arbitrator, that he could proceed on that basis. Is that the closest to construing the rules? Because then he goes on to talk about one consideration is efficiency and claimant's age, and so he then mentions equitable considerations as opposed to the language of the rules. Except that what we're now doing, Your Honor, is we're looking at the merits of the case, which this, which the Supreme Court and this circuit have specifically stated we don't do. We don't look at the merits of his case. We don't look at the merits, but we do look at whether the arbitrator was construing the rules or not. And I think the language that we've used is, you know, plausible construction in some earlier cases. Sure. So the plausibility doctrine was actually clarified by this circuit last year. Right. But that case can't overrule our prior decision.  So. Exactly. And what Southwest Regional said was that our prior decisions have never imposed an additional plausibility requirement that now a party is required to determine or to show the court that the arbitrator's interpretation of the rules was something that the court would agree with. So if the arbitrator comes up with an interpretation of the rules that's contrary to the plain language of the rules, you're not saying that that's enough, right? I would argue that under the Supreme Court that the arbitrator would be able to come up with, and under this Court's precedent as well, the arbitrator would be able to make a determination contrary to plain language. And this circuit has actually come to that determination numerous times in McClellan, in Jackson, in Sheet Metal Workers, in Todd Shipyards, in Lagstein in 2010, in Michigan Mutual. This Court has repeatedly said that an arbitrator is allowed to, as long as he is arguably doing his job and making a determination as to the scope of his ability, he can make a determination that's against what would otherwise seemingly be plain language of an agreement, whether that be a deadline on his ability to make a ruling, whether that be a specific price that was included in the arbitration agreement. So I would say that, yes, an arbitrator could do that. We don't have to get to that question here, because in this case, the only agreement that we had before that gave rise to the arbitration said that the parties agreed to be bound by the code, and the code, Rule 12409, vests in the arbitrators the sole ability to interpret and determine every single code provision, including 12401, and that that interpretation and determination is binding upon the parties. And both sides agreed to that. So we don't have a case like you would have in some other cases where the arbitration contract, for example, said you need to have three arbitrators. Okay? If that was the contract that the parties had signed, then an arbitrator might not have the ability to go against that. That's not what we have here. What we have here is an arbitration agreement signed by both parties where the parties have agreed to proceed under Finner's rules. Finner's rules specifically specify that the arbitrator is the sole decision-maker when it comes to those rules, and that his determinations thereon are binding on the parties. Would the case have been different if you had moved to amend your claim at an earlier stage to raise it to $125,000? I don't believe so, because, again, the decision-making is vested in the arbitrator. The arbitrator gets to make that determination. So if I had made a motion to amend, and now it's at $125,000, there is no Finner rule that deals with an amendment that takes a $100,000 claim over and above $100,000. So based on Rule 12-409, the sole decision-making ability in that case would be the arbitrator before whom the case ---- And he could have decided it either way. And he could have decided it ---- Either way, we should not overrule. Either way, it would have been binding on the parties pursuant to their own signed arbitration agreement. This Court, as has been stated by the Supreme Court and has been stated by this Circuit over and over, is we don't look at procedural determinations. When the arbitrators make a procedural determination, the only thing that the Court does is says, was he attempting to interpret the contract, which ---- Well, he looked at it in Polymaster. So Polymaster was actually distinguished by this very Court in Metzler. And in Metzler, the Circuit said that Polymaster was different because Polymaster, the arbitration agreement, specified the procedure that wasn't followed. But in Metzler, all the Court ---- the Court said that in this case, in our case, in Metzler ---- But the arbitrator in Polymaster construed that and said it's really irrational to have to hear a counterclaim often be in a different venue than where we're hearing the main complaint. And we said, we don't care about efficiency. That's contrary to the contractual agreement. So overturn the arbitrator's interpretation or noninterpretation. Right. And that ---- but that went to the heart of the arbitration agreement that the parties had explicitly placed into their arbitration agreement, was that we're going to hear everything here. And the Court in Metzler said, we don't have that here. What we have here is parties agreeing to arbitrate before the rules of the forum upon which they are in, and therefore, if they submitted an argument to the arbitrator and he made a determination, it's binding on them. And that's every single court that was cited by the district court here had that exact scenario where there was a specific provision in the arbitration agreement signed by the parties that restricted the arbitrator's procedural making determinations. We don't have that here. And therefore, it's respectfully submitted that this Court should reverse the district court, and because there is no basis not to confirm the award, and the Supreme Court has 10 or 11 of the Federal Arbitration Act, the award has to be confirmed. Respectfully, the award should be confirmed. And I'd ask if I could reserve my last minute and a half. Thank you very much, Your Honor. Okay. We'll hear from opposing counsel. Good morning, Your Honors. May it please the Court. My name is Stephen Buss, appearing on behalf of the appellee, John Sanchez. I was going to address three issues today, the first out with subject matter jurisdiction of this Court. The other one is the mandatory provisions for the number of arbitrators. And the third issue would be the absence of any waiver. In this particular case, when the opening brief was filed by the appellant, they relied on 28 U.S.C. 1291 for the basis of jurisdiction. And, of course, this Court knows that statute pertains to a final decision. This is not a final decision before this Court. This is where the arbitrator exceeded its powers by hearing a case which should have been heard by three arbitrators, and it's been remanded back to further proceedings based upon the Court's decision. So there's no final decision. Merits have not been addressed. In the reply brief that was filed by the appellant, they note 9 U.S.C. 16 as another basis for jurisdiction. And procedurally, that was defective because it was raising a new argument in the reply brief. But I responded in a motion to strike that, as well as a motion to amend my previous motion to dismiss for lack of subject matter jurisdiction. So the district court vacated. Is this right? Yes, Your Honor. Vacated the award? Yes, Your Honor. They vacated. And so 9 U.S.C. 16 gives us jurisdiction over an appeal taken from an order vacating an award. So I don't understand why we don't have jurisdiction here. Well, my understanding is if you look at 9 U.S.C. 16, subsection 3, it talks about a final decision. And the way I interpreted 9 U.S.C. But where does it say that? It says an order. An appeal may be taken from an order vacating an award, which is what we have here, right? That's correct. But the way I understand it, Your Honor, if the award is vacated and the appellant had nowhere else to go, this is a remand case going back to redo the arbitration hearing in accordance with the rules. Do you have a case that says we don't have jurisdiction under 9 U.S.C. 16? No, I don't, Your Honor. Have all the other circuits that have addressed this issue found against you determined that a remand does not deprive the court of jurisdiction under section 16? Not that I'm aware of, Your Honor. Take our word for it. Yeah, I will take your word for it. Now, going on to the secondary issue with the appointment of the three rules, which includes the FINRA rule 12401, the rule is very plain in its language that if a claim is over $100,000, you have to have three arbitrators and not a single arbitrator. This is not a case, Your Honor, where there's discretion with the arbitrator in how they handle a hearing and the procedures. Counsel, you heard your opponent say this, so I'll ask you. He indicated that the case law is clear that the number of arbitrators is a procedural question. Do you agree with that? No, I don't, Your Honor. Okay, and why is that? Because in this particular case, it's not like the procedure within the hearing that the arbitrator is making decision with their discretion. This is a mandatory explicit plain rule that says if a damage is over $100,000, you have to have three arbitrators. There's no discretion involved in that. And the arbitrator in this decision is a written decision. But, Counsel, with respect, the issue before the arbitrator was how do you treat the prayer in the complaint you treated as originally pleaded, which was $100,000, therefore fitting within the FINRA rule, or do you have to take into consideration some hint, some idea that an additional amount might be sought? So the arbitrator could, in fact, be construing how the rule would apply in that situation, right? No, I don't agree, Your Honor. Okay, why is that? Because basically the horse is out of the barn, so to speak. He knows that the claim is You're talking about FINRA, not horses. You're talking about horses? Yeah. He's aware of the fact that the claim is now above the $100,000. He's aware of that. In fact, when he had the chance to look at things when he made his decision, he noted in his arbitration award that the claim was $120,000. When can that happen? That can happen right up until the time that the hearing starts. All of a sudden, one side, the party making the claim, can say, well, actually now today we've decided we're seeking $125,000. And so it has to start all over again? It has to go before three arbitrators? Right. Well, there is ample opportunity. That's basically what happened here. It was at the 11th hour, maybe not the 11th hour and 59th minute, but the 11th hour. Why isn't it up to the arbitrator to determine, no, the claim is really what's been presented initially and, in this instance, virtually all the way up until the time the arbitration hearing began? Well, here's the problem with 12401. It doesn't talk about damages, by the way, in 12401. It talks about the amount of the claim. Right. And I think that's a key point, because 12401 doesn't say what kind of form you have. This is substance over form. 12401 doesn't say how you ask for the damages and what form you do. The reality is they ask for over $100,000 before the hearing started. And actually, under the record before the Court, I actually contacted Mr. Newman a few days before the hearing to find out what was going on here. I would have been willing to vacate the hearing before it happened and appoint the proper arbitrator. But is this in the record? No. Only the fact that I contacted Mr. Newman to find out what his position was on this, that's in the record. So your client's contract, the opposing counsel points out, also includes FINRA 12409, which says you've contractually found yourself, you agree that the panel or the arbitrator has the authority to interpret and determine the applicability of all provisions under the Code. And such interpretations are final and binding upon the parties. So you're bound to that part of the contract as well. And here, why did the arbitrator not interpret and determine the applicability of 12401, thus making you bound by it? Under the record, I don't think even references, I recall, is interpretation 12401. I understood being present at the hearing is more about the convenience of the parties and the fact that the appellant was an older gentleman. That's what I understood as well. He never referenced that. But if you read 12401, it says if you're going to go beyond three arbitrators, beyond a single arbitrator, you have to have my consent in writing. I never provided that consent. The fact is when I got the pre-hearing brief about 11 days before the hearing, that's the first time I saw $125,000, and actually it's $125,500 in damages. Counsel, some of this I think is off the record. At least I don't remember seeing it in the record. But at bottom, this arbitrator became aware before the arbitration began that there was a possibility that more than $100,000 might be asked. He, I believe, asked each of you for your opinion whether more than one arbitrator was necessary, right? Correct. Okay. And then he made a determination that based upon his understanding, or rather how he construed the FINRA rule, that because the original amount asked for was $100,000, that's what he was going to do. That's what we do in basically our district court all the time, don't we? Do we not? People allege that this is what's going to be sought. We rely on that to some degree. And, you know, it's got to be over a certain amount. If you're going to have certain things to follow, it may change. It's not an irrational thing that he did. He was just simply construing how best to handle this. Yes, he did consider the age of the parties and so on. But he also seemed, based on what I saw, he seemed to be construing the rules and making a fairly common sense determination in connection with those. Is that wrong? Yes, Your Honor. Why? Well, because the rule is mandatory. You know, if we take that approach. He's not changing the rule. The rule is the same rule. The question is, what do you look to to determine how the rule is applied? You're not changing the rule. The question is, do you look to the pair in the complaint or what allegedly occurs afterward? The complaint was not amended before the arbitration began, right? That's correct. So he said, I'm going to look at what's in the complaint, which is $100,000. I'm applying the rule as I understand it to be. Okay. And indeed, it may not be a big point, but if there's anything in 12401 that points one direction or another, it seems to me if you look at 12401A, which states that if the amount of the claim is $50,000 or less, the claim proceeds before one arbitrator and is subject to simplified arbitration procedures, doesn't that mean that the relevant time for determining the amount of the claim must be early on? Because otherwise, you could proceed on simplified procedures, and then all of a sudden the amount of the claim could be raised, and you'd have to start over again, not through simplified procedures. Well, that's the risk you take when you don't follow the proper procedures, Your Honor. In the perfect world, what should have happened here is the complaint should have been amended beforehand, which also precluded me from engaging in any discovery when I see the damages amounts have changed right before this started occurring. But do you know what penalized? I mean, it isn't as if you had damages of $125,000 imposed. Well, I wouldn't. Your Honor, without the basis to understand why it was raised right before the hearing, I wouldn't have that opportunity to find that information out. But the point that I'm trying to emphasize here is the fact that the rule is pretty plain. There's not a lot of discretion involved here. In the arbitrator's decision, he notes the claim of damages, what the amount is, in his arbitration award. He states here, claimant requested damages in the amount of $125,500. The purpose of the pre-hearing brief is to set forth your position on the case as well as the damages you were claiming. So the arbitrator knew the damages they were claiming now exceeded that $100,000. This is why the arbitrator even brought it up, you know, sua sponte at the hearing on his own before I could even raise the issue. But the fact remains is that they were asking for that amount when the post-hearing briefs were filed, which is part of your record. They're now asking for $134,000 additional sums of money. So the arbitrator, in fact, saying I'm going to go on just on her $1,000 complaint, he knew that the damages they were seeking were higher at that point, and he indicated that in his arbitration award. He referenced that. He understood that. So he knew the damages were higher. At that point, he didn't have the discretion to say, well, I'm just going to hear the case. Well, that is your position. That's correct. But do you understand why, at least from my perspective, when I look at this FINRA rule, the rule has not changed. The question is what figure do you look at to determine where the $100,000 comes from? In this case, that's what the complaint said, $100,000. That allowed a single arbitrator to proceed. He took the position in construing the rule that it's what's in the complaint that counts. The complaint was not amended. Now, I know you said there was some talk about it might go higher or something like that, but it wasn't amended. It didn't change. We might have a different case if the complaint itself had actually been amended prior to the commencement of the arbitration. Then I think your point might be pretty solid that he has no authority to change the FINRA rule. But at least based on the case law, certainly the Supreme Court's case law, this is procedural, isn't it? Well, it's procedural, but it's not discretionary, Your Honor. The rule is very clear that the damage – it didn't say what form. 12401 doesn't say it has to be in the complaint. It just says what's your value, what's the amount of damage you're seeking. Clearly, the appellant was seeking more than $100,000 in damages. Therefore, that rule applies, and you have to go by the rule. It's instructive to the arbitrator saying this is what you need to do if the damages are over a certain amount. You can't here in the case as a single arbitrator. So if it's not limited to the complaint, are you suggesting that if the plaintiff wakes up the morning of the arbitration and says, you know, I had a dream last night that I think I need to change this to $150,000, that that throws the whole thing out? Absolutely. You're changing your claim. It doesn't matter. Your complaint, you can't go and say, well, my complaint's only $100,000, but to the arbitrator, you say, well, now I want $125,000. That's what happened in this case. He changed the amount of the damages prior to the hearing. And 12401 doesn't say what format it has to be in. It just says, and I agree with the district court, it's substance over form. If your damage is over 100 regards what form you're asking it in. You mean backwards? It's form over substance? Or you truly do mean it's substance over form? Right. It doesn't matter what form the damages are in or requesting in. That's what the district court noted, too. The fact is it's over $100,000 at that point before the hearing started. Do you have any other arguments you want to make? Because you're almost out of time. Well, just on there's issues brought up of a waiver, but it wasn't addressed today. And this is a case where there's no waiver. Under the FINRA rules, it's 20 days before the hearing you have to file a written motion. I got the brief 11 days before the hearing. I contacted Mr. Newman, got no response. And, therefore, at the time of the hearing, my only option procedurally was to make the objection, which I did at the time before the hearing started. Thank you, Your Honors. Thank you. Counsel, you have a little bit of rebuttal time there. Thank you very much, Your Honors. And I'll be fairly brief. Two issues I just want to quickly point out. The first is that even had I filed a motion to amend, the arbitrator is not bound to accept it. Under the rules, he's allowed to reject that proposed amendment. So even had there been a motion, which there wasn't, he didn't have to accept it. He could have rejected the amendment, and then it's still a $100,000 claim as required as pled under the pleadings. And, actually, if we look at page 31 of my brief where I quote his decision, his decision actually wasn't on equitable grounds. His decision was, I notice that neither party has made a motion, A, to amend the complaint, or, B, a motion to dismiss or otherwise address the question of the $100,000. And for that reason, on that particular score, I am going to, as the arbitrator, make the determination that we'll proceed in a single panel, single person rather than a panel arbitration for the purpose of this proceeding. So he actually didn't rule on equitable grounds. He ruled, as he interpreted the contract, as he interpreted the rules, no motion to amend had been made. He's bound by the original complaint. And under this Court, under Schoenduf, the arbitrator's interpretation of the scope of his powers entitled to the same deference as his determination on the merits, and under Southwest Regional, as long as he's even arguably construing or applying the contract, the fact that a court is convinced he made a serious error is irrelevant. And if he made any interpretation or application, the Court's inquiry ends and it's respectfully submitted that's what should be applied here. Thank you both for your argument. We appreciate it. The case just argued is submitted. And the Court stands in recess for the day.
judges: M. Smith, Ikuta, Bates